UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : No. 5:13-cr-00200 |
| | : |
| GERARDO ROBERTO HERNANDEZ, | : |
| Defendant. | : |

**O P I N I O N**
Motion for Compassionate Release, ECF No. 52 - Denied

**Joseph F. Leeson, Jr.**                                                                                                  **March 28, 2022**
**United States District Judge**

I.     **INTRODUCTION**

Defendant Gerardo Roberto Hernandez, who is currently serving a sentence for a violation of supervised release, has filed a motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) based on his medical conditions and the allegedly harsher conditions created by the coronavirus pandemic.  The Government opposes release.  For the reasons set forth below and after consideration of the factors in 18 U.S.C. § 3553(a), the motion is denied.

II.    **BACKGROUND**

On April 24, 2013, Hernandez was charged by Indictment with possession with intent to distribute one hundred grams or more of heroin, to which he pled guilty on August 21, 2013.  On July 6, 2015, he was sentenced to a time-served term of imprisonment and four (4) years of supervised release.  Hernandez subsequently violated the terms of supervised release with new charges in the Southern District of New York and, on October 4, 2017, supervised release was revoked.  He was sentenced to a term of eighteen (18) months incarceration, consecutive to the

sentence imposed by the United States District Court for the Southern District of New York,[1] with no new term of supervised release to follow. Hernandez has an anticipated release date of March 19, 2023.

Hernandez argues in his motion for compassionate relief that he has a particularized risk of contracting COVID-19 due to the presence of the same in his housing unit and his medical conditions: chronic asthma, former smoker, obesity. *See* Mot. 1, 5-6, ECF No. 52. Hernandez contends that this risk, in addition to the harsh conditions created by the coronavirus pandemic and the "short" period of incarceration he has left to serve, are extraordinary and compelling reasons for a reduction in sentence. *See id.* 1, 6-11. Hernandez asserts that his vaccination does not eliminate these risks because the vaccine is not a guarantee, especially with the new variants. *See id.* 12-17. Hernandez contends that the § 3553 factors support his release, noting that he has only had one misconduct since being incarcerated and has served eighty percent of his sentence.

The Government opposes Hernandez's release or a reduction in sentence, arguing that because Hernandez has been vaccinated, he does not present an extraordinary and compelling reason permitting relief. *See* Opp., ECF No. 57. The Government further asserts that Hernandez's fear of the pandemic and the harsher conditions of confinement do not overcome the danger that he presents to the community, the time remaining on his sentence, and all other § 3553(a) considerations. *See id.*

### III. LEGAL STANDARD

The First Step Act empowers criminal defendants to request compassionate release with

---

[1] On July 21, 2017, Hernandez was sentenced in the Southern District of New York to seventy-two (72) months' imprisonment followed by three (3) years of supervised release.

the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[2] This section dictates that the defendant must first move for compassionate release with the Bureau of Prisons ("BOP"), which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risks COVID-19 poses in the federal prison system do not excuse the exhaustion requirement).

Once a defendant satisfies the exhaustion requirement, the court may reduce a term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). Section 1B1.13 of the United States Sentencing Guidelines provides that the court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A), "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [] the reduction is consistent with this policy statement." 18 U.S.C. Appx. § 1B1.13. *See also United States v. Williams*, No. 15-471-3, 2020 U.S. Dist. LEXIS 147664, at *10 (E.D. Pa. Aug. 17, 2020) ("In order to find compelling and extraordinary reasons, the policy statement additionally requires a

---

[2] Section 3582(c) is actually part of the Sentencing Reform Act of 1984 ("SRA"), but was amended by the First Step Act to provide prisoners a more direct route to court for their claims. *See United States v. Torres*, No. 18-414, 2020 WL 3498156, at *6 (E.D. Pa. June 29, 2020).

court to find that a defendant is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)'" (quoting 18 U.S.C. Appx. § 1B1.13(2))).

The Sentencing Commission has identified the medical condition of a defendant as an extraordinary and compelling reason if:

(i) The defendant is suffering from a terminal illness . . . .
(ii) The defendant is—
    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

18 U.S.C. Appx. § 1B1.13, App. Note 1.  However, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Santiago*, No. 15-280, 2020 U.S. Dist. LEXIS 124869, at *7 (E.D. Pa. July 15, 2020).  Similarly, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."[3]  *Raia*, 954 F.3d at 597.

Even if a defendant's medical condition is sufficiently severe, the court must still consider the 18 U.S.C. § 3553(a) sentencing factors and whether the defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).  *See United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (holding that "the existence of some

---

[3] *See* BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited April 13, 2021); *United States v. McLaughlin*, No. 17-121-2, 2021 U.S. Dist. LEXIS 29146, at *4-9 (E.D. Pa. Feb. 16, 2021) (summarizing the BOP's response to the coronavirus pandemic).

health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit"). The § 3553(a) sentencing factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Section 3142(g) provides:

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>   (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

## IV. ANALYSIS

Initially, the Court finds that Hernandez has satisfied the exhaustion requirement by first seeking compassionate release with the BOP.

### A. Hernandez's medical conditions do not present an extraordinary and compelling reason to reduce his sentence.

Hernandez asserts that his medical conditions: chronic asthma, former smoker, and obesity (body mass index ("BMI") of 32) put him at an increased risk to COVID-19. *See* Mot. 5. However, his medical records show that his conditions are not as severe as suggested. Rather, Hernandez, who is thirty-two years old, has only mild, intermittent asthma. *See* Records 1, 3, 14, 29, 49 (diagnosis dates 06/10/2013, 09/23/2020, 06/16/2021, 08/21/2021). He has been proscribed an albuterol inhaler for treatment. *See id.* 20, 58 (prescriptions started 10/23/2019, 09/23/2020, 08/20/2021). During multiple visits in August 2021, Hernandez denied "breathing difficulty, shortness of breath, sweats, nausea, vomiting or any other complaint." *See id.* 25, 29, 35. Further, Hernandez is not obese. Rather, his medical records show that although Hernandez was diagnosed with obesity on October 5, 2016, his obesity resolved by February 21, 2018. *See id.* 14, 49, 59. Obesity is defined as a BMI of 30 or higher, while a BMI of 25 to 29.9 is defined as overweight. *See* https://www.cdc.gov/healthyweight/effects/index.html (last visited March 25, 2022); https://www.nhlbi.nih.gov/health/educational/lose_wt/risk.htm (last visited March 25, 2022). Despite Hernandez's claim, there is no evidence he has a BMI of 32.[4] According to the

---

[4] For the reasons further discussed below, even a BMI of 32 would not present an extraordinary and compelling reason for Hernandez's release. *See United States v. Gonzalez*, No. 14-00015, 2021 U.S. Dist. LEXIS 30989, at *6 (E.D. Pa. Feb. 19, 2021) (finding "numerous courts in this Circuit have held that a BMI around or moderately above 35 is insufficient to present an extraordinary and compelling reason that may warrant release" and citing cases).

medical records, Hernandez's BMI was 28 on September 23, 2020, and more recently, on August 20, 2021, his BMI was 28.4. *See* Records 5, 33-34. Notably too, for at least the last few years, Hernandez has not used an ambulatory aid, and "has normal gait/transferring." *See id.* 5, 26, 33, 36 (dated 09/23/2020, 08/06/2021, 08/20/2021, 08/24/2021). Hernandez received the Moderna vaccine on May 5, 2021, and June 2, 2021. *See id.* 55.

There is no indication that Hernandez's medical conditions are not being appropriately managed by the BOP or that he is unable to engage in normal activities of daily living. *See United States v. Ramsey*, No. 2:14-cr-00296, 2021 U.S. Dist. LEXIS 26959, at *12 (E.D. Pa. Feb. 12, 2021) (observing that the inmate's "conditions have been adequately managed during his incarceration, he is able to partake in normal activities of daily life, and most importantly, he is able to provide self-care [and t]hese observations weigh against a finding that [the inmate's] medical conditions present extraordinary and compelling reasons for a reduction of his sentence"); *United States v. Pangelinan*, No. 17-483, 2020 U.S. Dist. LEXIS 121710, at *4-5 (E.D. Pa. July 9, 2020) (denying the motion for compassionate release where there was no evidence that the prisoner's medical conditions were not being appropriately managed by the prison). Accordingly, Hernandez, who is not obese and has only mild, intermittent asthma that is being treated with an albuterol inhaler, does not have a medical condition that presents an extraordinary and compelling reason for release. *See United States v. Newman*, No. 02-CR-539, 2021 U.S. Dist. LEXIS 116926, at *5 (E.D. Pa. June 23, 2021) (concluding the defendant's mild asthma and BMI of 32.4 provided no reason to differ from the courts that have "consistently denied motions for compassionate release in the past involving similar combinations of medical conditions"); *United States v. Slone*, No. 16-400, 2020 U.S. Dist. LEXIS 113586, at *1-2 (E.D. Pa. June 30, 2020) (determining that the defendant's mild asthma is not an extraordinary and

compelling reason for compassionate release).

Moreover, to the extent that Hernandez having mild, intermittent asthma and being overweight creates a potential[5] risk factor for COVID-19, his COVID-19 vaccination reduces these potential risks and further militates against a finding of extraordinary and compelling reasons for his release.  *See United States v. Hannigan*, No. 19-373, 2021 U.S. Dist. LEXIS 77967, at *16 (E.D. Pa. Apr. 22, 2021) (holding that even where the inmate's medical conditions would have presented an extraordinary and compelling reason for release, his risk was significantly reduced by his COVID-19 vaccination so as to render the conditions "not sufficiently extraordinary and compelling to warrant compassionate release"). *See also United States v. Holder*, No. 2:07-cr-00541-JDW, 2021 U.S. Dist. LEXIS 76481, at *7-8 (E.D. Pa. Apr. 21, 2021) (reasoning that in denying compassionate release, courts have emphasized the impact of the BOP's increased distribution of vaccines, the facility's current infection status, and whether an inmate's conditions are under control).  Hernandez argues that his vaccination status should not impact a finding of extraordinary and compelling reasons because the vaccines are not effective.  *See* Mot. 12-19.  Notably, however, Hernandez cites mainly to the ongoing risks to vaccinated people sixty-five years of age and older.  *See id.*  Regardless, the CDC currently reports that "COVID-19 vaccines are effective in preventing COVID-19 and are recommended for everyone 12 years of age and older."  *See* https://www.cdc.gov/aging/covid19/covid19-older-

---

[5]   It is only "moderate-to-severe or uncontrolled asthma" that presents a risk factor.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited March 25, 2022). *See also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *United States v. Moldover*, No. 14-637, 2020 U.S. Dist. LEXIS 212264, at *21-22 (E.D. Pa. Nov. 13, 2020) (commenting that a BMI between 25-30 kg/m2 is "only a potential risk factor" and that"[d]istrict courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors").

adults.html (last visited March 28, 2022).

Hernandez's medical conditions therefore do not present an extraordinary and compelling reason to reduce his sentence. *See* 18 U.S.C. Appx. § 1B1.13, App. Note 1.

> **B.     The harsh conditions created by the coronavirus pandemic do not create an extraordinary and compelling reason for Hernandez's release.**

Hernandez argues that the harsher prison conditions, including COVID-19 outbreaks and lockdowns, also present an extraordinary and compelling reason for a reduction in sentence. He relies largely on the *Hatcher* decision out of the Southern District of New York. *See* Mot. 6-11 (citing *United States v. Hatcher*, 2021 U.S. Dist. LEXIS 74760 (S.D.N.Y. Apr. 19, 2021)).

Hernandez's reliance on *Hatcher* is misplaced for at least five reasons. First, and most importantly, Hatcher had a well-established history of physical and mental health conditions that were so severe to warrant a downward variance at the time of sentencing. *See Hatcher*, 2021 U.S. Dist. LEXIS 74760, at *3. The impact of the lockdown conditions was therefore greater on Hatcher than on other inmates. Hernandez has not presented any such unique circumstances. To the contrary, his medical records show that he has not suffered medically as a result of the coronavirus pandemic, *see* Records 29 (Medical records dated 08/20/2021 indicate in the area of psychiatric disorders: "**No**: Mood Impaired, Mood-Down, Anxious, Sleep Impaired, Hallucinations-Auditory, Hallucinations-Command, Hallucinations-Visual, Suicide/Self-Harm Thoughts, Homicide/Other Harm Thoughts." (emphasis added)). Second, Hatcher was "unable to receive mental health care, drug abuse treatment, and other important services" that the court believed were "critical to her physical and mental health, and to her ability to reenter society as a productive and law-abiding citizen." *See id.* at *12. Although this Court recommended at the time of sentencing in 2017, that Hernandez "be made eligible for and participate in a mental health counseling program while incarcerated," *see* ECF No. 50, his medical records show that

he currently does not need any mental health treatment, *see* Records 29. Third, it was only by releasing Hatcher that the court could ensure that she "receive, *inter alia*, the mental health, drug rehabilitation, vocational, and other support she needs." *See id.* at *15. It is not necessary to release Hernandez to treat him or otherwise effectuate the purposes of sentencing, as will be discussed in greater detail below. Fourth, Hatcher was serving her initial term of imprisonment, not a sentence for a violation of supervised release. This difference is significant because unlike Hatcher, Hernandez has shown that he is likely to reoffend and presents a danger to the community if released. Fifth, Hatcher had a three-year period of supervised release following her term of imprisonment; therefore, a reduction in the period of imprisonment did not complete her sentence. She was not simply released from custody as Hernandez asks to be.[6] In fact, she was subject to home incarceration for the first six months following the date of her release. *See id.* at *16. This Court recognizes that Hernandez will be subject to supervised release on the New York sentence, but this Court has no control over the conditions of that supervision and will have no jurisdiction if Hernandez violates supervision again.

The allegedly "harsh" conditions of confinement created by the coronavirus pandemic,

---

[6]   To the extent Hernandez seeks early release to home confinement, *see* Mot. 27, this Court lacks jurisdiction. Section 12003 of the CARES Act allows *the Director of the Bureau of Prisons* [BOP] to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under" 18 U.S.C. § 3624(c)(2). *See* Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). The "BOP has sole authority to determine which inmates to move to home confinement under 18 U.S.C. § 3624(c)(2)," *see United States v. Ramirez-Ortega*, No. 11-251, 2020 U.S. Dist. LEXIS 148629, at *8 (E.D. Pa. Aug. 14, 2020), and nothing in the CARES Act gives this Court the authority to transfer a prisoner to home confinement, *see* 18 U.S.C. § 3621(b)(5) (stating that the BOP's designation with regard to home confinement "is not reviewable by any court"); *United States v. Pettiway*, No. 08-129, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) ("Regardless of the nature of defendant's medical condition or the existence of the coronavirus pandemic, Congress did not provide the courts with the authority to release inmates into home confinement at an earlier time under the CARES Act. This discretion rests solely with the Attorney General and the BOP Director." (internal citations omitted)).

apply to all inmates and do not in themselves warrant special treatment for Hernandez. *See United States v. Everett*, No. 2:12-cr-162, 2021 U.S. Dist. LEXIS 18320, at *5 (W.D. Pa. Feb. 1, 2021) (concluding that although the strict lockdowns and limited access to the library, educational programs, computers, and phones is not ideal, every prisoner in the BOP facilities is subject to similar conditions brought about by the coronavirus pandemic and does not support special or unique treatment to any one prisoner). Hernandez has not shown that, unlike Hatcher, he has been uniquely impacted. *See United States v. Gonzalez*, 2021 WL 1088258, at *3 (E.D. Pa. Mar. 22, 2021) (DuBois, J.) (concluding that "an outbreak at the defendant's correctional institution, standing alone, does not satisfy the extraordinary and compelling reasons requirement"); *United States v. Slone*, No. 16-400, 2020 U.S. Dist. LEXIS 113586, at *1-2 (E.D. Pa. June 30, 2020) (holding that the defendant's fear of contracting COVID-19 in the close quarters of a federal prison given his mild asthma does not warrant compassionate release). Consequently, the prison conditions created by the coronavirus pandemic do not present an extraordinary and compelling reason to reduce Hernandez's sentence.[7]

### C. A reduction in sentence is not warranted because Hernandez presents a danger to the community if released.

Hernandez, when he was eighteen (18) years old, was convicted of assault arising from a stabbing. Since that time,[8] he has accumulated three federal convictions, two for felony drug

---

[7] If an inmate fails to show an extraordinary and compelling reason for compassionate release, "it is not necessary for the Court to advance to the next step of the § 3582(c)(1)(A)(i) inquiry by assessing the application of the § 3553(a) factors and possible danger to the community imposed." *See United States v. Hight*, 488 F. Supp. 3d 184 (E.D. Pa. 2020) (finding no need to consider the sentencing factors because the inmate failed to present extraordinary and compelling reasons justifying his immediate release). Nevertheless, this Court briefly addresses whether Hernandez is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g) and the sentencing factors in 18 U.S.C. § 3553(a)).

[8] Hernandez is currently thirty-two (32) years old.

trafficking offenses and one for conspiracy to commit Hobbs Act robbery. Hernandez has been arrested three times while on federal supervised release, including his arrest and subsequent conviction that resulted in his current term of imprisonment for violating supervised release. He has spent much of his adult life in prison. Hernandez has never been deterred by prior terms of incarceration or by court-ordered supervision, which shows that he presents a danger to the safety of any other person or to the community if released. *See United States v. Foster*, No. 12-175-1, 2021 U.S. Dist. LEXIS 115903, at *20-21 (E.D. Pa. June 22, 2021) (denying compassionate release where the defendant, who was serving a sentence for conspiracy to distribute controlled substances, had three prior convictions for drug offenses, served time for possession of a firearm by a convicted felon, and had shown a propensity to reoffend while under court supervision, was a danger to the community); *United States v. Irizzary*, No. 14-652-13, 2021 U.S. Dist. LEXIS 35179, at *25 (E.D. Pa. Feb. 25, 2021) (concluding that the defendant, who was serving a sentence for his role in a drug-trafficking organization and was on parole at the time he committed his offense, presented a danger to others and the community if released early). The nature of Hernandez's convictions, which involve violent behavior, possession/use of a firearm, and trafficking in large quantities of controlled substances, is also evidence of the danger he presents to the community if released. *See United States v. Blanco*, No. 18-424, 2021 U.S. Dist. LEXIS 212205, at *9 (E.D. Pa. Nov. 2, 2021) (concluding that the defendant, who pled guilty to trafficking more than two kilograms of cocaine and was responsible for trafficking much more, presented a significant danger to the community if released, especially when considering that he had a lengthy record of criminal conduct, including the commission of crimes while on supervised release); *United States v. Munford*, No. 15-376-7, 2021 U.S. Dist. LEXIS 5423, at *12-13 (E.D. Pa. Jan. 12, 2021) (determining that "it is clear on an objective basis that

[the defendant] still continues to present a danger to the community" where he had played a key role in a drug trafficking organization by conspiring to distribute a substantial amount of cocaine and marijuana and to launder money).

Therefore, Hernandez's danger to the community, as provided for in 18 U.S.C. § 3142(g), prevents his release.

### D. The factors set forth in 18 U.S.C. § 3553(a) do not support a reduction in Hernandez's sentence.

For the reasons set forth in the previous section, releasing Hernandez would not afford adequate deterrence to criminal conduct or protect the public from further crimes. *See* 18 U.S.C. §§ 3553(a)(2)(B)-(C). Also for the reasons in the previous section, the nature and circumstances of the offense weigh against a sentence reduction. *See id.* § 3553(a)(1).

The percentage of the sentence served in this case is somewhat deceiving. Hernandez submits that he has served approximately eighty percent of his sentence, which is true when the seventy-two (72) month sentence out of the Southern District of New York is considered together with his eighteen (18) month consecutive sentence in this case and with good time credit already earned. However, Hernandez only recently started serving the sentence in this case, which was intentionally ordered to run consecutive to the New York sentence. Assuming he receives additional good time credit, his projected release date is March 2023; therefore, he still has approximately twelve (12) months of an eighteen (18) month sentence yet to be served. Releasing Hernandez after having served less than half of his sentence would not satisfy the § 3553 factors. *See* 18 U.S.C. § 3553; *United States v. Maldonado*, No. 17-138, 2021 U.S. Dist. LEXIS 8112, at *10 (E.D. Pa. Jan. 15, 2021) (determining that where the inmate had served less than half of his sentence, release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment pursuant to 18 U.S.C. § 3553(a)(2)(A)).

Regardless of how the percentage is calculated, release at this time would not satisfy the § 3553 factors. *See United States v. Mitchell*, No. 08-007, 2020 U.S. Dist. LEXIS 228862, at *3-4 (E.D. Pa. Dec. 7, 2020) (denying compassionate release to the defendant, who had served approximately 116 months of a total 138-month sentence (120 months, plus an additional 18 months for a supervised release violation) or 84%). Considering Hernandez's criminal history, the seriousness of both his underlying offense and the offense resulting in the supervised release violation, as well as his history of committing offenses while on supervision, a reduction would not reflect the seriousness of his offenses and would, instead, promote sentencing disparities. *See id.* at *20 (holding that cutting twenty-two (22) months off the defendant's 180-month sentence "would promote disparity in sentencing and would certainly fail to reflect the seriousness of [his] violations" (internal quotations omitted)).

The factors in § 3553 therefore do not support a sentence reduction.

## V.  CONCLUSION

Hernandez's medical conditions are not sufficiently serious to provide an extraordinary and compelling reason for his release. Further, the harsher prison conditions resulting from the coronavirus pandemic are not unique to Hernandez and have not impacted him in an extraordinary way to show an extraordinary and compelling reason for his release. The absence of an extraordinary and compelling reason, alone, dictates that the motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) be denied.

Nevertheless, the Court has also considered whether Hernandez presents a danger to the community if released and whether a reduction is consistent with the factors in 18 U.S.C. § 3553(a). In light of the seriousness of Hernandez's criminal history, the nature of both his underlying offense and the offense resulting in the revocation of supervised release, and

Hernandez's history of violating release conditions, he presents a danger to the community if released. For all these reasons and others discussed more fully herein, releasing Hernandez is not consistent with 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission. The motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A) is therefore denied.

     A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge